UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60527-CIV-COHN/SELTZER

SUSAN MANFREDI,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed, respectively, by Plaintiff Susan Manfredi ("Claimant") and by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether there exists substantial evidence in the record to support the determination of the Administrative Law Judge ("ALJ") that Claimant retains the capacity to return to her past relevant work and, therefore, that she is "not disabled" within the meaning of the Social Security Act. The undersigned concludes that substantial evidence does support the ALJ's determination. Accordingly,

_____

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1 (5th Cir. 1981).

the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 9) be DENIED, that Defendant's Motion for Summary Judgment (DE 12) be GRANTED, and that the Commissioner's decision be AFFIRMED.

II.    PROCEDURAL HISTORY

On August 22, 2005, Claimant filed applications for a period of Disability, for Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI"), alleging that she became disabled as of December 15, 2004. Tr. 19, 59-63. The Social Security Administration denied Claimant's applications initially and upon reconsideration. Tr. 19, 28-29, 34-35, 50-51, 54-55.

Claimant filed a timely request for hearing, which was held before an ALJ on March 6, 2007. Tr. 340-83. Claimant appeared at the hearing and testified. Tr. 343-69. On June 22, 2007, the ALJ issued his decision, finding that Claimant is "not disabled" because she retains the residual functional capacity to return to her past relevant work, as that work is both actually and generally performed. Tr. 19-27. On March 28, 2008, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 7-9, 19.

On April 14, 2008, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision (DE 1). On August 14, 2008, the Commissioner filed an Answer, together with the administrative record (DE 6, 7). On September 12, 2008, Claimant filed Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE 9), and on October 6, 2008, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE 12). Thereafter, Claimant did not respond to the Commissioner's Motion, and her time for doing so has passed.

2

The matter is now ripe for review.

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within the Commissioner's Motion and finds that it fairly and accurately summarizes the relevant portions of the administrative record.

> Plaintiff alleges disability since December 15, 2004, based on degenerative disc disease, hepatitis B, hepatitis C, osteoarthritis, osteopenia, depression, and anxiety (Tr. 19, 28, 34, 64, 78, 88, 116, 118). At the time of her alleged onset of disability, Plaintiff was 49 years of age (Tr. 57, 59, 71, 125, 136). Plaintiff has a twelfth-grade education and vocational training as a medical assistant, and past relevant work as a healthcare worker, daycare worker, and telephone order verifier (Tr. 26, 65, 69, 100-04).
>
> A review of medical records predating Plaintiff's alleged onset of disability reveal that, on July 25, 2003, Plaintiff presented to Nadia Chediak, M.D., with complaints of pain in her back (Tr. 23, 144). Dr. Chediak assessed low back pain, lumbar strain, and recommended x-rays and a bone density test (Tr. 23, 144). On July 31, 2003, x-rays and a bone density test demonstrated mild osteoarthritis of the lumbar spine and osteopenia, but were negative for fracture, dislocation, subluxation, or acute trauma, and showed that alignment of Plaintiff's lumbar spine was intact (Tr. 23, 150-51). A blood test that same day was negative for hepatitis C (Tr. 148). On August 6, 2003, Plaintiff returned to Dr. Chediak with complaints of continued back pain (Tr. 23, 143). Dr. Chediak prescribed Robaxin, and recommended follow-up in three weeks (Tr. 23, 143). Plaintiff, however, did not contact Dr. Chediak again until September 15, 2004, when she requested a prescription refill for Robaxin (Tr. 23, 141).
>
> On April 14, 2005, four months after her alleged onset of disability, Plaintiff presented to the North Broward Hospital (North Broward) with complaints of intermittent low back pain (Tr. 23, 167-68). On examination, she had normal gait, positioned herself on the examination table easily, and was negative for acute tenderness (Tr. 23, 168). Her patellar and Achilles reflexes were good, and straight leg raise was

3

negative (Tr. 23, 168). Plaintiff was diagnosed with lumbago, prescribed ibuprofen for pain, and told to begin taking calcium and vitamin D (Tr. 23, 168). May 2005 hepatitis B and C assays were reactive (Tr. 229-240).

On August 22, 2005, Plaintiff returned to North Broward with complaints of persistent back pain (Tr. 163). She was diagnosed with chronic back pain, possible hepatitis B, and hepatitis C (Tr. 164). She was prescribed Elavil and Ultram (Tr. 164). An August 24, 2005 bone study was consistent with mild osteopenia (Tr. 23, 181-85). On September 1, 2005, Plaintiff presented to Noemi Reyes, M.D., with complaints of anxiety (Tr. 23, 160-61). On examination, she demonstrated pain in her metacarpophalangeal (MCP) joints (Tr. 23, 160). Dr[.] Reyes diagnosed anxiety, arthritis, and hepatitis C, and prescribed Ativan (Tr. 23, 160).

On September 19, 2005, Plaintiff completed a Disability Report in connection with her application for disability benefits (Tr. 64-70). She reported that her conditions first began bothering her in January 1999, but that she was able to continue working and that she never had to work fewer hours or change jobs as a result (Tr. 64-65). In a Daily Activities Questionnaire and Anxiety Questionnaire completed the same day, Plaintiff reported that she suffered from pain in her neck, back, and joints, and that she had two anxiety attacks per day (Tr. 75-79). She also reported, however, that she received no treatment other than medication to relieve her physical pain, and that medication helped control her anxiety (Tr. 76, 79). She reported that normal, everyday tasks caused her to experience anxiety, but that she could bathe, dress, prepare meals, drive, shop for groceries, and take her son to school on a daily basis (Tr. 76, 79).

On October 1, 2005, Plaintiff presented to John Catano, M.D., for physical evaluation (Tr. 23, 187-89). She reported a history of low back pain and hepatitis, but stated that Ultram and Darvocet partially controlled her pain (Tr. 23, 187). She reported that she felt exhausted on some days, but "good" on others, and that she could walk two blocks without stopping to rest (Tr. 23, 187). Dr. Catano noted that Plaintiff walked without the use of an assistive device (Tr. 23, 187). On examination, Plaintiff's chest, heart, lungs, and abdomen were normal (Tr. 188). She had no clubbing, cyanosis, or edema of any joints, her pulses were symmetrical bilaterally, she had full

4

range of motion in all joints, and she demonstrated no tenderness in her neck (Tr. 23, 188). Although Plaintiff demonstrated some tenderness and spasm in her paraspinal muscles, straight leg raise was negative, and she could get on and off the examination table without difficulty (Tr. 23, 188). Plaintiff could not tandem walk, but she walked on her heels and toes without difficulty, and her grip strength was normal (Tr. 23-24, 188). Romberg's and Babinksi signs were also negative, and a neurological examination was normal (Tr. 24, 189). Dr. Catano diagnosed history of hepatitis C with fatigue syndrome, underweight, osteoarthritis of the lower back, and polysubstance abuse (Tr. 24, 189).

On October 6, 2005, Plaintiff completed a Function Report (Tr. 81-88). She reported that she was depressed and tired, and that she experienced pain in her neck, back, and fingers (Tr.82). She further reported, however, that she could perform chores around the house, bathe, dress, feed herself, prepare meals, drive to the grocery store, and do laundry (Tr. 82-83). She also reported that she could pay bills, count change, handle a savings account, and use a checkbook; and that she did not need an assistive device for ambulation (Tr. 84, 87).

On November 17, 2005, Plaintiff presented to Judith Migoya, Psy. D., for psychological evaluation (Tr. 24, 201-03). Although she reported pain, depression, anxiety, exhaustion, and trouble sleeping, Plaintiff admitted that she could care for herself, maintain her home, and handle her financial responsibilities (Tr. 24, 201-02). On examination, Plaintiff was polite, cooperative, and well-groomed (Tr. 202). She was able to follow conversation without trouble, and her speech process was logical and coherent (Tr. 202). Although Plaintiff's attention was mildly impaired, and her mood and affect were depressed, she was negative for hallucinations or delusions, and she denied suicidal or homicidal ideation (Tr. 24, 202). Plaintiff demonstrated some difficulty with memory, and her abstract thinking and insight were limited; however, her memory for both recent and remote events was adequate, she was negative for signs of mania, and she was alert and fully oriented (Tr. 24, 202). Dr. Migoya diagnosed major depressive disorder, moderate; recurrent panic disorders without

agoraphobia; arthritis; and hepatitis B and C (Tr. 24, 20[2]).[2]
She opined that Plaintiff appeared relatively high-functioning
in previous years, and that Plaintiff could handle her financial
responsibilities (Tr. 24, 20[2]).

On January 6, 2006, Plaintiff returned to Dr. Reyes for follow-
up with complaints of pain in her cervical and lumbar spine (Tr.
24, 157). On examination, Plaintiff had normal range of motion
across her back (Tr. 24, 157). Dr. Reyes diagnosed hepatitis
C, anxiety, depression, osteoarthritis, and osteopenia (Tr. 24,
157). She prescribed Ativan, Elavil, Darvon, Fosamax,
Auralgan, and hepatitis A vaccine, and recommended Plaintiff
attend a hepatitis clinic (Tr. 24, 157-58). On February 13,
2006, testing was positive for hepatitis C antibody (Tr. 228).

On April 7, 2006, Plaintiff returned to Dr. Reyes for follow-up
with complaints of insomnia (Tr. 25, 155). On examination, her
heart, lungs, and abdomen were normal, and her deep tendon
reflexes were intact (Tr. 25, 155). Dr. Reyes prescribed Ativan,
Elavil, Darvon, and Restoril, and recommended that Plaintiff
return for follow-up in three months (Tr. 25, 155-56). On May
13, 2006, Plaintiff returned to North Broward with complaints
of pain in her back (Tr. 25, 264). She was diagnosed with an
acute myofascial lumbar strain, prescribed Motrin and Robaxin,
and told to follow-up with her primary care physician (Tr. 25,
267).

On June 6, 2006, Plaintiff completed an additional Function
Report and Anxiety Questionnaire (Tr. 108-17). She reported
that she experienced varying amounts of pain, depression, and
fatigue on a daily basis; that she had as many as three anxiety
attacks per day; and that she had trouble completing daily
tasks (Tr. 109-11, 116-17). She also reported, however, that
she could drive, bathe, dress herself, prepare meals, do
laundry, and shop for groceries, and that she could pay bills,
count change, handle a saving account, and use a checkbook
(Tr. 109-11, 116-17). Finally, Plaintiff reported that she read
and watched television during her free time, socialized weekly,
could walk three blocks before stopping to rest, could follow

---

[2] Agoraphobia, associated with panic attacks, is the irrational fear of open spaces,
characterized by marked fear of being alone or of being in public places where escape
might be difficult or unavailable. See Dorland's Illustrated Medical Dictionary 29 (29th ed.
2000).

directions, and did not require the use of an assistive device (Tr. 111-114).

On July 11, 2006, Plaintiff presented to Martin Segel, Ph.D., for psychological evaluation (Tr. 25, 286-90). She reported a history of hepatitis, depression, anxiety, and arthritis in her back, but she also reported that she occasionally left her home to see a movie and go to dinner (Tr. 287-89). On examination, Plaintiff was alert, fully oriented, and appropriately groomed (Tr. 25, 289). Her immediate and delayed memory were intact, she was able to recall four of four words correctly, and her thought process was clear and relevant (Tr. 25, 289). Although her attention and concentration were poor and her speech was overproductive, Plaintiff was articulate and engaging, and her receptive language functioning was intact (Tr. 25, 289-90). Plaintiff was also able to understand both simple and complex verbal commands, her insight was fair, her judgment was good, and her abstraction was adequate (Tr. 25, 289-90). Dr. Segel diagnosed major depressive disorder, recurrent, moderate; chronic generalized anxiety disorder; hepatitis B and C; and arthritis (Tr. 25, 290). Based on this one-time examination, Dr. Segel assigned Plaintiff a Global Assessment of Functioning (GAF) score range between 50 and 55 (Tr. 290).

On August 8, 2006, Plaintiff presented to Roderick Santa Maria, M.D., for physical evaluation (Tr. 25, 305-06). Although she reported a history of depression, anxiety, exhaustion, hepatitis, and back pain, Plaintiff stated that she could drive and shop for groceries (Tr. 25, 305). On examination, Plaintiff had full range of motion across all joints except in her lumbar spine, she was negative for clubbing, cyanosis, or edema, and straight leg raise was negative (Tr. 25, 305). Plaintiff could climb on and off the examination table without difficulty, squat and rise without difficulty, and ambulate without an assistive device (Tr. 25, 306). She was alert and fully oriented, her mental status was intact, and her deep tendon reflexes, vibratory senses, and cranial nerves were preserved (Tr. 25, 306). Dr. Santa Maria assessed hepatitis B and C, chronic fatigue, low back pain, and normal neurological functioning throughout (Tr. 25, 306).

On November 9, 2006, Plaintiff presented to the North Broward emergency room (ER) with complaints of rectal bleeding and right finger pain (Tr. 26, 315-16). She was discharged that

7

same day with a diagnosis of mild colonic diverticulitis and right index finger distal interphalangeal (DIP) joint arthralgia (Tr. 26, 315-16).

On December 4, 2006, Plaintiff presented to the Broward General Medical Center with complaints of pain in her right index finger and numbness in her right thumb (Tr. 26, 224). On examination, she had a small callus over the dorsum of the right index finger DIP joint, but no blistering, fluid, lumps or cysts, and she had full range of motion in her right hand (Tr. 26, 224). Plaintiff's median, radial, ulnar, and axillary nerve distributions were also intact, and Tinel's and Phalen's signs were negative (Tr. 26, 224). An x-ray showed mild arthritic changes in the right index finger DIP joint, but Plaintiff's right hand and carpal bone were negative for fracture or dislocation (Tr. 26, 224). She was given an In-Foam finger splint for her right index finger and told to take Motrin for pain relief as needed (Tr. 26, 224).

On December 12, 2006, Plaintiff returned to the North Broward ER with complaints of low back pain (Tr. 26, 218). X-rays of the lumbar spine were negative for fracture or any acute bony abnormalities (Tr. 26, 319). On January 30, 2007, Plaintiff returned to Dr. Reyes with complaints of low back pain (Tr. 26, 152-54). Although Plaintiff had muscle spasms and decreased lumbar spine flexion on examination, Dr. Reyes noted that previous x-rays of her lumbar spine were negative (Tr. 26, 153). Dr. Reyes prescribed Darvon and Desyrel (Tr. 26, 153).

At the administrative hearing on March 6, 2007, Plaintiff testified that she suffered from degenerative disc disease, depression, anxiety, arthritis, hepatitis, and colonic diverticulitis (Tr. 345). She testified that she had worked as a telephone order verifier, but that pain in her back and arms now prevented her from working (Tr. 350-51). Plaintiff testified that she was in the process of seeking treatment for hepatitis B and C, but could not locate a psychiatrist who would approve Interferon treatment (Tr. 351-52). She testified that she had not undergone an MRI of her back (Tr. 367). Plaintiff testified that she experienced fatigue on a daily basis due to her hepatitis, the pain in her fingers, and the pain in her back (Tr. 353-54). Plaintiff testified that she maintained a driver's license and that she could drive (Tr. 356-57). She also testified that she could shop for groceries and perform light

housework (Tr. 356-60). Finally, although Plaintiff testified that
she had trouble sitting or standing for long periods of time, she
suggested that she may be able to work collecting tolls at a
tollbooth (Tr. 363, 367).

Commissioner's Motion at 2-9 (DE 12).

## IV.    STANDARD OF REVIEW[3]

In reviewing claims brought under the Social Security Act, the court's role is a limited

one.   The Commissioner's findings of fact must be affirmed if they are based upon

"substantial evidence." Richardson v. Perales, 402 U.S. 389, 401 (1971); Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" is evidence that a

reasonable person would accept as adequate to support the challenged conclusion.

Perales, 402 U.S. at 401; Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).   The

court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment

for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to determining

whether the Commissioner's factual findings are supported by substantial evidence, the

court must determine whether the ALJ properly applied the correct legal standards.

Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## V.    ANALYSIS

### A.    The Sequential Evaluation

A "disability" is defined as an inability

---

[3] The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20
C.F.R. § 416.901 et seq., and are generally identical to those set forth in 20 C.F.R. Part
404, Subsection P, 20 C.F.R. § 404.1501 et seq., governing Social Security disability
determinations.  The standard of review in SSI cases is the same as the standard for
Social Security disability cases.  42 U.S.C. § 1383(c)(3). Consequently, the case law
addressing Social Security disability determinations is generally applicable to SSI cases.

to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can
be expected to last for a continuous period of not less than 12
months.

42 U.S.C. § 1382c(a)(3)(A).  In determining the merits of a claim for benefits, courts must

consider the evidence as a whole, including:  1) objective medical facts or clinical findings;

2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as

testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age,

education, and work history.  Walden, 672 F.2d at 839.

        To arrive at a determination as to disability, the ALJ must undertake the sequential

evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920.  This process requires that

the ALJ first determine whether the claimant is presently engaged in substantial gainful

employment.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, a finding of "no disability" is

made.

        If the claimant is not engaged in such work, then the ALJ must proceed to the

second step and determine whether the claimant suffers from a "severe impairment."  An

impairment is severe if it significantly limits the claimant's physical or mental ability to

perform basic work activities.   20 C.F.R. §§ 404.1520(c), 416.920(c).   If a severe

impairment is not found, then the ALJ will conclude that there is no disability; if a severe

impairment is found, then the ALJ will proceed to the next phase of the analysis. Id.

        The third step requires the ALJ to determine whether the claimant's impairment

meets or equals those listed in Appendix I of the Regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If so, the ALJ will find the claimant disabled without considering age,

education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. Smith, 646 F.2d at 1077. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is

11

prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. Id.; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Bowen, 889 F.2d at 50.

B.    Application of the Sequential Evaluation by the ALJ

After considering all of the evidence, the ALJ concluded that Claimant is capable of returning to her past relevant work and, therefore, is "not disabled" under the Social Security Act. Tr. 26-27.

12

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[4] He first observed that Claimant has not engaged in substantial gainful activity since her alleged onset of disability. Tr. 21. The ALJ next found that Claimant suffers from the following "severe" impairments: "back disorder and back pain." Tr. 21. At the same time, the ALJ found that Claimant's "major depressive disorder and generalized anxiety disorder" are "not severe." Tr. 21. Additionally, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 22.

The ALJ then assessed Claimant's residual functional capacity ("RFC"). As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints; however, the ALJ found that Claimant's subjective complaints "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 26. Then, after considering the entire record, including medical evidence, the ALJ found that Claimant can perform the requirements of "sedentary work," as she retains "the residual functional capacity to, in an eight hour workday, sit up to six hours, stand/walk up to two hours and lift/carry up to ten pounds."[5] Tr. 22.

---

[4] Preliminarily, with respect to Claimant's DIB application, the ALJ noted that Claimant "has acquired sufficient quarters of coverage to remain insured through December 31, 2009." Tr. 19. With respect to Claimant's SSI application, Claimant need only establish disability while her application is pending. See 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335. Accordingly, Claimant's eligibility for DIB and SSI benefits are not at issue in this matter.

[5] The Regulations define "sedentary work" as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20

After determining Claimant's RFC, the ALJ considered whether she could return to her past relevant work. Tr. 26-27. The ALJ noted that Claimant's past employment as a "phone verifier required sedentary exertional work activity." Tr. 27. Then, comparing Claimant's RFC to the demands of her past work, the ALJ found that Claimant "is able to perform [her past work as a phone verifier] as actually and generally performed." Tr. 27. He concluded, therefore, that Claimant "has not been under a disability, as defined in the Social Security Act, from December 15, 2004 through the date of this decision" and that she is not entitled to either DIB or SSI benefits. Tr. 27.

C. Discussion

Claimant disputes the findings and conclusions of the ALJ. Claimant argues that the ALJ erred in failing to find that her mental impairment is severe and in failing to discuss

C.F.R. §§ 404.1567(a), 416.967(a). Social Security Ruling 83-10 provides a similar, but somewhat more detailed, definition of "sedentary work":

> Sedentary work. The regulations define sedentary work as involving lifting no more that 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> "Occasionally" means occurring from very little up to one third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

1983 WL 31251, at * 5 (S.S.A).

14

the severity of her Hepatitis C and her arthritis of the fingers. <u>See</u> Claimant's Motion at 10-19 (DE 9). The undersigned, however, does not find Claimant's arguments persuasive.

### 1.     Severity of Claimant's Mental Impairment

Claimant first disputes the ALJ's determination that her depression and anxiety are "not severe." <u>See</u> Claimant's Motion at 10-15 (DE 9). In disability determinations, the burden is on the claimant to show that her impairments are "severe," as that term is defined under the law. <u>See</u> <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1030 (11th Cir. 1986).

The Code of Federal Regulations defines a severe impairment as one that "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). But when assessing the severity of a claimant's mental impairment, an ALJ is governed by even more precise standards.[6] According to the Code of Federal Regulations, an ALJ must evaluate four areas of function listed in 20 C.F.R. §404.1520a(c)(3): (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. When rating the degree of limitation in the first three areas of function, the ALJ must employ a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the fourth area of function, the ALJ must employ a four-point scale: none, one or two, three, and four or more. <u>Id.</u> According to the Regulations, if the degrees of limitation in the first three areas of function are found to be "none" or "mild," and if the degree of limitation in the fourth area of function is found to be "none," the ALJ will

---

[6] The undersigned notes that Claimant failed to reference the Code's precise standards that govern the ALJ's determination in arguing that he erred in assessing her mental impairments. <u>See</u> Claimant's Motion at 10-15 (DE 9).

"generally conclude" that the mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ properly evaluated Claimant's mental impairment with respect to each of the four broad functional areas set forth in 20 C.F.R. § 404.1520a(c)(3). He found that Claimant has: "mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation." Tr. 21-22 (emphasis added). The ALJ then applied the pertinent disability Regulations to these findings and concluded that Claimant's "major depressive disorder and generalized anxiety disorder" are "not severe." Tr. 26. The ALJ's findings are supported by substantial evidence in the administrative record.

With respect to the first two areas of function, the ALJ found that Claimant's restrictions of daily activities and difficulties in maintaining social functioning are mild; these findings are well-supported by several record entries. On September 19, 2005, Claimant reported that even though her mental impairment dates to January 1999, she managed to continue working, never had to change jobs, and never had to work fewer hours as a result. Tr. 64-65. On that same date, Claimant completed a Daily Activities Questionnaire and Anxiety Questionnaire, in which she disclosed that her medication helped her control her anxiety; further, the record contains no indication that she had received any mental health treatment. Tr. 79. Such a conservative approach is an acceptable basis for discounting allegations of disabling symptoms. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996). And her ability to reasonably remedy her medical condition with medication further suggests that it is not disabling. See Dawkins v. Bowen, 848 F.2d 1211,

16

1213 (11th Cir. 1988). In addition, on June 6, 2006, Claimant reported that she could bathe, dress, prepare meals, drive, shop for groceries, and care for her son. Tr. 76, 79. She also reported that she socialized with family on a weekly basis, and she told Dr. Segel on July 11, 2006, that she occasionally goes out to dinner and to the movies with friends. Tr. 112-13, 289. At the March 2007 hearing, Claimant testified that she drove, could shop for groceries, and could perform light housework. Tr. 354-60. Further, the ALJ correctly noted that Claimant did not receive regular psychiatric treatment. Although not dispositive, such lack of treatment is nonetheless properly considered in assessing the severity of a claimant's mental impairment. Tr. 26; see Gwathney v. Chater, 104 F.3d 1043, 1044-45 (8th Cir. 1997). Claimant counters that Drs. Migoya and Segal opined that she does suffer a depressive disorder. But these individuals were one-time consultative psychologists, and the Eleventh Circuit has long held that a one-time examining physician's opinion is not entitled to significant weight. See Gibson v. Chater, 779 F.2d 619, 623 (11th Cir. 1986). The ALJ, therefore, had adequate grounds upon which to find that Claimant suffers only mild limitations in activities of daily living and in maintaining social functioning. Tr. 26.

With respect to the third area of function, the ALJ found that Claimant suffers only mild limitations in concentration, persistence, and pace; this finding also enjoys adequate support in the record. Claimant reported in October 2005 and June 2006 that she could pay bills, count change, handle a savings account, and use a checkbook. Tr. 84, 111. In November 2005, Dr. Migoya noted that Claimant was cooperative, could follow a conversation without difficulty, and had logical and coherent speech processes. Tr. 202. And in July 2006, Dr. Segal noted that Claimant's receptive language functioning was intact, that she was articulate and engaging, that her abstraction was adequate, that she

17

possessed good judgment, and that she could follow simple and complex verbal instructions. Tr. 25, 286-90.

Finally, with respect to the fourth area of function, the ALJ found that Claimant has not suffered from any episodes of decompensation; the record contains no evidence that would indicate otherwise.

Accordingly, substantial evidence in the record supports the ALJ's findings with respect to the four areas of function, as well as his resulting conclusion that Claimant's mental impairment is "not severe."

### 2.     Consideration of Claimant's Hepatitis and Arthritis

Although Claimant is correct that the ALJ did not specify (at step 2) whether Claimant's hepatitis and arthritis are "severe," remand is not required because the ALJ clearly considered (at step 4) both impairments in assessing Claimant's RFC. See SSR 96-8p (stating that "[i]n assessing RFC [at step 4], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'") (emphasis added). As several courts have noted, a remand based on an ALJ's deficient step 2 findings is necessary only where an ALJ fails to consider at step 4 the effect of each of a claimant's impairments – "severe" or not – in assessing the claimant's RFC; that did not occur in this matter. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (ALJ's failure to find that claimant's cervical condition was severe could not constitute reversible error because ALJ properly could consider that condition in determining whether claimant had a sufficient RFC to allow him to work); Newsome v. Barnhart, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006) (stating that "[g]iven the ALJ's thorough discussion of the evidence in the record concerning plaintiff's

18

oppositional behavior, the court finds that – to the extent that the ALJ erred in failing to make an explicit determination as to whether plaintiff's secondary diagnosis of ODD [Oppositional Defiant Disorder] constituted a severe impairment at step two of the sequential evaluation – the error was harmless"); Masch v. Barnhart, 406 F. Supp. 2d 1038, 1054 (E.D. Wisc. 2005) (stating that "if the ALJ fulfills this obligation at step four [of considering all impairments, whether severe of not, in assessing RFC], any error at step two will likely be harmless").

Here, the ALJ did consider Claimant's arthritis and hepatitis – noting the diagnoses no fewer than seven times – in finding that Claimant retained an RFC for sedentary work. Tr. 22-26. Despite Claimant's hepatitis and arthritic finger, the evidence well-supported the ALJ's RFC finding. More specifically, as concerns Claimant's arthritic finger, the record is devoid of evidence that would suggest that it rendered her unable to perform sedentary work. On only two occasions – in November 2006 and in December 2006 – did Claimant seek treatment for pain or numbness in her right hand. Tr. 26, 224, 315-16. On examination, physicians found that her median, radial, ulnar, and axillary nerve distributions were intact, that she was negative for blistering, fluid, lumps, or cysts, and that she had full range of motion. Tr. 224. Further, x-rays showed only mild arthritic changes in her right index finger joint, and Claimant was instructed to take only Motrin, as needed, for the discomfort. Tr. 224; see Wolfe, 86 F.3d at 1078 (allegations of disabling pain may be discounted due to conservative treatment); Riley v. Massanari, 139 F. Supp. 2d 1293, 1298 (M.D. Ala. 2001) (stating that "it is significant that the claimant . . . takes only over-the counter medication for the alleged pain"). Further, with respect to Claimant's hepatitis, she did claim to suffer fatigue as a result thereof. Tr. 82, 201, 305. Yet, the record also shows

that Claimant maintained the ability to complete daily living activities and engage in social activities at a level consistent with the ability to perform at least sedentary work. Tr. 112-13, 289.

Accordingly, although the ALJ did not make specific findings regarding the severity of Claimant's arthritic finger and hepatitis, he clearly considered both of these impairments when assessing her RFC for sedentary work; hence, remand is not warranted. Furthermore, substantial evidence supports the ALJ's finding that Claimant could perform sedentary work.

Finally, because Claimant's previous job as a telephone verifier required only sedentary exertional work activity, the ALJ properly found that she remains able to perform that work "as actually and generally performed." Tr. 27. Therefore, the ALJ properly concluded that Claimant has not been under a disability since her alleged onset date and that she is not entitled to either DIB or SSI benefits. Tr. 27.

## VI. RECOMMENDATION

Claimant had a fair hearing and full administrative consideration in accordance with the applicable statutes and regulations. The ALJ's findings are supported by substantial evidence in the administrative record. The ALJ, therefore, correctly concluded that Claimant is not entitled to either DIB or SSI benefits. Accordingly, the undesigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 9) be DENIED, that Defendant's Motion for Summary Judgment (DE 12) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the

Honorable James I. Cohn, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 21 day of October 2008.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

Nora Staum, Esq.
5421 N. University Drive
Suite 102
Coral Springs, Florida   33067
Counsel for Plaintiff Susan Manfredi

David I. Mellinger, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida   33394

Scott C. Keller, Esq.
Assistant Regional Counsel
Social Security Administration
601 East 12th Street, Room 535
Kansas City, Missouri   64106

21